# GRIFFITH v. BRAINE.

---

### PATENTS; CLAIMS AND SPECIFICATIONS.

1. *Quære,* whether, in view of the state of the art relating to rail joints, claims in an interference involving an improvement in such joints, which appeared originally in the junior party's application, should be narrowly construed, when the question presented is whether the claims should be read upon the other party's device.

2. The subject-matter of two applications involving an improvement in rail joints, *held* not to materially differ, and a decision of the Commissioner of Patents overruling a motion for dissolution of the interference by the party who in his preliminary statement showed conception subsequent to the filing date of the other party, and awarding priority to the latter, *affirmed.*

No. 686.  Patent Appeals.  Submitted January 12, 1911.  Decided March 6, 1911.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.                    *Affirmed.*

The facts are stated in the opinion.

*Mr. William R. Davis* for the appellant.

*Mr. D. P. Wolhaupter* and *Mr. Melville Church* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This is an appeal from the decision of the Commissioner of Patents in an interference proceeding awarding judgment of priority of invention to appellee, Bancroft G. Braine, the senior party. It appears from the record that the date of conception alleged by appellant, Lawrence Griffith, in his preliminary statement, was subsequent to appellee's filing date, and appellant was therefore ordered to show cause why judgment should not be rendered against him on the record. In response to this order, appellant filed a motion for dissolution, which motion was denied by the three tribunals of the Patent Office. The issue comprises six counts, the following being sufficient, however, to illustrate the invention:

"1. A rail joint comprising a fish plate formed with a downwardly and inwardly inclined upper surface broader than the adjoining underside of the rail head, a filler block interposed between the upper surface of the fish plate and the rail head, the under surface of said block being inclined to correspond with the upper surface of the fish plate, said inclined surface extending inwardly beyond the inner edge of the fish plate, the upper and inner surface of said block fitting closely against the underside of the rail head and the web of the rail, whereby the filler block can have no inward movement, and the fish plate may move inwardly on the filler block."

"5. A rail joint comprising a fish plate formed with a downwardly and inwardly inclined upper surface, and a lower surface inclining outwardly and downwardly to adapt it to bear on the upper surface of the base of the rail, a filler block interposed between the upper surface of the fish plate and the rail head, the under surface of said block engaging the upper surface of the fish plate and being correspondingly inclined and extending inwardly beyond the inner edge of the fish plate, the upper surface of said filler block fitting closely against the underside of the rail head, and the inner surface thereof engaging the web of the rail, whereby the filler block will be held against inward movement, and the fish plate may be adjusted

inwardly on the filler block and on the base of the rail to take up the wear."

The purpose of the invention is set forth as follows in appellant's specification: "It is well known that in rail joints of the ordinary construction the point of greatest wear on the fish plates or angle bars is at the ends of the rails directly under the heads thereof. The remainder of the fish plate frequently shows very litle wear when it is necessary to discard the fish plate because of the excessive wear near the ends of the rails. This wear is occasioned by the hammering of the car wheels as they pass across the joint in the rails. It will, of course, be understood that when the fish plates have become worn, the entire plate must be discarded, notwithstanding the fact that the vastly greater portion of the plate is in good condition and is practically unworn. It is the main object of this invention to provide wearing plates adapted to be fitted between the angle bars or fish plates and the undersides of the rail heads, said wearing plates protecting the fish plates and taking up all the wear occasioned by the passing of the car wheels. It is also the object of this invention to provide a pair of wearing plates or filler blocks adapted to fit closely against the undersides of the rail heads and the webs of the rails, the under surfaces of said wearing plates extending inwardly beyond the inner surfaces of the contacting fish plates, whereby the fish plates may be adjusted inwardly on the filler blocks to take up wear, while the filler blocks are held rigidly against the rails."

It is contended by counsel for appellant that, in view of the state of the art, the claims which appeared originally in appellant's application should be given such a narrow construction as not to permit of their being read upon appellee's device. Even conceding, for the sake of argument, that the issue in this case should be narrowly construed, we are unable to see wherein the subject-matter of the two applications materially differ. Counsel for appellant insist that in appellee's structure the filler blocks are bolted to the webs of the rails, and thus become a part thereof; while in appellant's joint the filler blocks,

as they become worn, are capable of vertical adjustment. There is nothing in appellant's application to warrant this contention. As shown by the drawings, the bolts holding the fish plates in position pass through holes in the filler blocks. These holes appear to be only large enough to accommodate the bolts. Therefore, the filler blocks are as incapable of vertical adjustment as they are in appellee's device. There is nothing in either the specification or claims to justify any other view. In fact the statement is made that "the fish plates may be adjusted inwardly on the filler blocks to take up wear while the filler blocks are held rigidly against the rails."

A longitudinal adjustment seems to be the only one appellant had in mind. For this purpose he formed the filler blocks of greater length than the fish plates, so that, as the former became worn, they could be shifted longitudinally until a fresh surface was presented to the point subject to the greatest wear.

The decision of the Commissioner of Patents is affirmed, and the clerk is directed to certify these proceedings as by law required.                                          *Affirmed.*